---------o---------

## PENCE *v.* McPHERSON.

CONTRACT.—*Construction of.*—A contract provided : "Both parties are to use due diligence in procuring all necessary logs and timber for the employment of said mill, and bear equal expense in procuring the same, and also to share equally in all expenses necessary in procuring the necessary hands and teams to run said mill, and are to share and share alike in the profits thereof."
*Held*, that this provision did not require either party to furnish a definite part of the logs, teams, or hands.

PRACTICE.—*Demurrer.*—A judgment will not be reversed for overruling a demurrer to a bad paragraph of an answer in support of which no evidence was given on the trial.

SAME.—*Motion to Strike Out.*—A paragraph of an answer which does not differ in substance from another paragraph should be stricken out on motion, but overruling such a motion is a harmless error, for which a judgment will not be reversed.

ESTOPPEL BY DEED.—A. and B. were partners in a grist mill, to which was permanently attached a circular saw mill, in which C., who had no ownership in the real estate, held an interest. A. and B. sold, and by their joint deed conveyed the entire property, including, with C.'s assent, the saw mill.

*Held*, in a suit by C. against A., the surviving partner, to recover the value of the saw mill, that the latter was estopped from saying he did not acquiesce in its sale.

APPEAL from the Clinton Common Pleas.

ELLIOTT, J.—Suit by Pence, the appellant, against McPherson. The case presented by the complaint is this: McPherson, Haun and Wilson, who were partners and the owners of a grist and saw mill in Clinton county, on the 14th of December, 1858, in and by their firm name of ".John H. Haun & Co." entered into a written contract with Pence, by which it was agreed that Pence should furnish a double circular saw mill, and have the same put up in the steam mill of Haun & Co., and attached to the steam engines in said mill, and put in good running order; Haun & Co. to pay one-half of the entire cost of the circular saw mill, and the expenses of putting it up, over and above the sum of five hundred dollars; the saw mill to remain in the mill of Haun & Co. for five years, and as much longer as the parties might agree; Haun & Co. to furnish the necessary power to run it, and all the other expenses in operating it to be borne by the parties equally, and the net profits derived therefrom to be equally divided between them; the property in the saw mill "to be absolutely vested, and remain in said Pence, and not, in any event, subject to any debts or obligations of, or judgments against, said firm of Haun & Co., or either of the individual members of said firm, save only that they, the said Haun & Co., are to be invested with such proportion of the property of said mill as any payment which they may make on the purchase, delivery, and expense of erecting the same may justly entitle them to." And it is alleged that Pence, pursuant to said agreement, did, immediately thereafter, purchase and erect, in the mill of Haun & Co., a saw mill, in all respects corresponding to that described in said contract, at an expense of seven hundred dollars, the whole of which he paid; that said saw mill remained in the mill of Haun & Co., and was operated under the agreement until the 17th day of September, 1860,

at which time Haun & Co. sold and conveyed their mill property and the circular saw mill to Hood & Davis, for the gross sum of ten thousand dollars, and delivered to them possession thereof; that the circular saw mill, at the date of said sale, was of the value of seven hundred dollars, which Haun & Co. appropriated to their own use, and refuse to pay the same, or any part thereof, to the plaintiff; that Haun and Martin afterwards died, leaving the defendant McPherson the sole surviving partner. The defendant answered in four paragraphs. 1. The general denial. 2. That Haun & Co. paid three hundred dollars on the purchase of said circular saw mill, and one hundred dollars of the expense of shipping and putting it up; and that the plaintiff was indebted to them in the further sum of seven hundred dollars for services rendered him, and for money paid to his use, all of which is presented as a set-off against any amount found due the plaintiff, and prays judgment for the residue. 3. Set-off, substantially the same as the second. 4. This paragraph alleges that the plaintiff failed to furnish one-half of the hands to run the saw mill, and failed to furnish logs therefor, or teams to haul logs, by reason whereof the mill was idle a large portion of the time, to the defendant's damage five hundred dollars; "all of which it was agreed and understood between the parties should be settled out of the proceeds of the same after sale."

The second and fourth paragraphs were demurred to, and the demurrers overruled. The court also overruled a motion to strike out the third paragraph. To these rulings the plaintiff excepted, and then filed a reply to said paragraphs. 1. A general denial. 2. Alleging that all the matters therein set up were fully settled and adjusted between the parties before the commencement of the suit.

The issues were tried by the court, by agreement of the parties, without a jury. Finding and judgment for the defendant, a motion for a new trial having been made and overruled.

The appellant insists that the court below erred in over-

ruling the demurrers to the second and fourth paragraphs of the answer. The objection urged to the second paragraph is, that no bill of particulars was filed with it. The record, as we understand it, does not sustain the objection; it contains a quite lengthy bill of particulars, and it is evident that both the court and the parties understood it as applicable to the answer, from the fact that it appears that the appellant moved the court to strike it out, which was overruled. The ruling on the demurrer to the fourth paragraph presents a different question. The matters set up in that paragraph are in the nature of a counter-claim, but it presents no defense, for the reason that the contract between the parties did not impose upon the plaintiff the obligation to furnish a definite portion of the logs for the mill, or the teams to haul them, or the necessary hands to run the mill, the failure to do which is complained of in that paragraph. The contract provides that, " both parties are to use due diligence in procuring all necessary logs and timber for the employment of said mill, and bear equal expense in procuring the same, and are also to share equally in all expenses necessary in procuring the necessary hands and teams to run said mill, and are to share and share alike in the profits thereof."

This provision of the contract requires both parties to use diligence in procuring logs for the mill, and charges each with an equal moiety of all the expense of logs, teams and hands, or, in other words, all the expenses are first to be paid from the gross earnings, and the net profits to be divided equally. It does not provide that each shall procure half the logs, or half the teams or hands, but that the expenses thereof shall be shared equally.

We think the paragraph is bad, and that the demurrer to it should have been sustained. But we cannot reverse the judgment for that error, for the reason that the evidence given on the trial is all in the record, and it appears therefrom that no evidence was given or offered in support of

that paragraph.    The plaintiff was not injured, therefore, by the error.

 The appellant also complains of the ruling of the court in refusing to strike out the third paragraph of the answer.

As that paragraph did not differ in substance from the second, it simply encumbered the record, without being of any advantage to the defendant, and should have been stricken out; but the ruling of the court could not prejudice any substantial right of the appellant, and, under repeated rulings of this court, the judgment should not be reversed for a harmless error.

The only remaining question arises upon the refusal of the court to grant a new trial on the ground that the finding for the defendant is contrary to the evidence.    It appears from the evidence that Pence, promptly, after making the contract with Haun & Co., purchased the circular saw mill at a cost of five hundred and sixty dollars, and had it brought to, and put up in, the mill of Haun & Co.   In the language of the witness, it was "permanently and solidly bolted and fastened down" into the frame of the steam mill.    The cost of transportation and putting it up, added to its cost in Cincinnati, made a total of six hundred and sixty dollars, of which sum Hood paid for Haun, or Haun & Co., one hundred and seventy dollars, and Pence paid the residue.    The saw mill was run, under the contract between the parties, until the 17th of September, 1860, at which time Haun & Co., then consisting of Haun and McPherson, sold and conveyed the entire mill property to Hood and Davis, for the gross sum, as is stated in their deed, of twelve thousand dollars.

 This sale evidently included the circular saw mill.   It is true that McPherson testifies that he did not sell it, or acquiesce in the sale thereof to Hood and Davis, nor did he derive any benefit from the sale, but says that the grist mill belonged to him and Haun, and the saw mill to Haun and Pence.   He does not deny that the saw mill was sold with the grist mill, both being sold together as one prop-

erty, and for a sum in gross, and passed by the same deed of conveyance in which he joined. He concedes that the saw mill was sold to Hood and Davis, and does not pretend that the sale was made by Pence, or that any value was fixed or agreed upon for the saw mill, separate from the amount to be paid for the grist mill. By the terms of the contract between Haun & Co. and Pence, the saw mill was regarded as personal property. It was permanently attached, however, to the frame of the steam mill, and Haun & Co. were bound to suffer it to remain there, and to furnish power to run it, for the period of five years, over three years of which were unexpired at the time of the sale to Hood and Davis. Haun & Co.'s hands were thus tied by their contract with Pence, and they could not well sell their mill property, unless, by the assent of Pence, it could all be sold together. Pence did assent. It was sold together, and McPherson joined in that sale and conveyance. Haun may have been the active agent in making the sale, but McPherson was his partner; he joined in the conveyance, and cannot now be heard to say that he did not acquiesce in the sale.

That Pence is entitled to recover, we think is very clear from the evidence, but the amount to which he is thus entitled is not entirely free from doubt. The saw mill, as we have seen, cost when put up, six hundred and sixty dollars, and the evidence shows that, at the time of the sale to Hood and Davis, it was worth its original cost, less the depreciation by its use, which the witnesses testify to be from fifty to one hundred dollars. But it appears that Haun & Co. paid one hundred and seventy dollars of the original cost, and by the terms of the contract became joint owners with Pence in the proportion that sum bears to the whole cost. A settlement, however, seems to have been made between the parties, after the sale of the mill, "of the partnership accounts growing out of the putting up and running of the mill," in which Pence fell in debt to Haun & Co., in the sum of fifty-six dollars, which he secured by note. Whether the

one hundred and seventy dollars paid by Haun & Co. was included in that settlement, is not shown, nor is it at all material to the decision of the question involved in this court. The court erred in refusing a new trial.

The judgment is reversed, with costs, and the cause remanded for a new trial.

J. N. Sims, for appellant.

